All right, thanks. You may be seated. Our third case of the day is United States v. Holley. Mr. Airola. Good morning, Your Honors. May it please the Court. David Airola on behalf of Appellant Xavier Holley. I'm joined by my colleagues Ms. Fierst and Mr. Young. Your Honors, we have two main arguments today. The first, which I'll address, relates to a series of errors that the District Court made when calculating Mr. Holley's sentence. These errors, in the aggregate, call into question the validity of the punishment imposed in this case. The second argument, as you heard from my colleague Mr. Young in a moment, is that Mr. Holley's trial counsel was clearly conflicted, which undermined the integrity of the proceedings and the representation that Mr. Holley received in this case. The Hobbs Act imposes a 20-year maximum sentence for anyone who, by robbery or extortion, obstructs, delays, or affects interstate commerce or, quote, attempts or conspires so to do. The question here is one of statutory construction. When someone is convicted of both conspiracy and attempt under the Hobbs Act, as Mr. Holley was here, can the court double the penalties when those offenses are based on the same underlying conduct, directed towards the same object, and ultimately produce the same harm? The answer lies in a Supreme Court case in Prince, which says that the question comes down to Congress's intent. I'm sorry, I thought in your reply brief your argument had changed to be that the District Court abused its discretion by imposing consecutive sentences. We decided, the question you just posed, in Oliver, right, that conspiracy and attempt can both be punished as a matter of statute and constitutional law. Your Honor, we would submit that Oliver is distinguishable from this case both on the law and the facts. In Oliver, it is true that the court upheld the imposition of a consecutive sentence for a defendant that was convicted of both conspiracy and attempt under the Hobbs Act. The court did not have an occasion to consider, as part of that case, in part because the arguments weren't advanced by counsel, whether Prince and some of the other authorities that we cite in our brief warn against or prohibit the imposition of consecutive punishments. I didn't see a double jeopardy argument in your brief. Are you making a constitutional argument? Your Honor, we're not contesting that attempt and conspiracy are separate offenses under the Bloch-Barber test. We concede, of course, that each of them requires proof of a fact that the other does not. And this argument against consecutive sentences, was that made at the district court? Your Honor, at resentencing in 2024, counsel did argue against the imposition of consecutive sentences by reference to 18 U.S.C. 3584. The issue of Prince and some of the other things I am discussing did not come up at resentencing. Okay, so the arguments you're making now were not made before the district court. I think there's overlap between the arguments that I'm making now and the arguments made in court. They did specifically in their position paper. Trial counsel did object to the imposition of consecutive sentences and argued that Mr. Hawley ultimately should receive the statutory maximum of 20 years. That's consistent with what we believe is the appropriate punishment here. I want to go back, Your Honor, just to Oliver briefly because I want to acknowledge that that is a recent decision where consecutive sentences were upheld. As I said, Oliver did not engage with the question of whether applying this framework in Prince, consecutive sentences would have been barred. Oliver is also distinguishable on its facts. In Oliver, the factual predicate for the conspiracy and attempts involved over a year of planning in the lead up to the robbery that ultimately occurred. So when you keep saying Prince, I mean, so your argument has to be that Congress did not authorize subsequent punishments for conspiracy and attempt. That's a statutory interpretation argument. And where do I look in your brief for your analysis of the statutes? We would understand that Congress doesn't authorize this. Your Honor, it's covered in our opening brief. I don't believe it's addressed to the same extent in the reply brief, but it is in, I believe, the second section of our opening brief. And you think Oliver did not address whether Congress authorized a consecutive sentence for conspiracy and the separate offense of attempt? No. I think much of the reasoning in Oliver was around whether conspiracy can be considered distinct from the attempt. And the reasoning, at least as came out during oral argument in that case, was because they were not contemporaneous, the conduct that gave rise to the conspiracy and the attempt, the attempt was just one part of the larger conspiracy that had conduct spanning over a year. The Court seemed to ground the fact, ground their decision in that fact, as well as the fact that in upholding the imposition of consecutive sentences, the Court made much of the fact that Oliver had an extensive criminal history. He was a career criminal, 27 prior convictions, I think seven of which were felonies, numerous BOP disciplinary infractions. Those were all cited as aggregating factors in the Court's opinion in Oliver that they believe warranted or at least supported the district court's decision to impose a consecutive sentence. We don't have that same fact pattern here. We have a conspiracy that played out over the course of, at best, 48 hours, involving our client, Mr. Holley, who was 18 years old at the time of the offense. So this is an argument about discretion under 3553A, right? Yes, Your Honor. This is not an argument that Congress didn't authorize anyone to ever get consecutive sentences. Yes, Your Honor. I'm simply trying to distinguish the facts of Oliver from our own because I think there is an underlying theme in both Oliver and other cases where the Court has upheld the imposition of a consecutive sentence. I think many of those cases are distinguishable in their facts or they're distinguishable because of their facts. Don't the guidelines tell the district court to make these sentences consecutive? I thought the guidelines say if you don't reach the guidelines recommended sentence, then you should run the sentences consecutive until you reach the guidelines sentence. Your Honor, that is correct. That's in Section 5G1.2. It does say that, and as our briefs argue, that is very much in tension with not only other provisions of the sentencing guidelines but also certain federal sentencing laws. You didn't bring a challenge to that provision of the guidelines as somehow against the law, invalid, unconstitutional, anything like that? Our argument is that it's inconsistent with several parts of federal sentencing law and the guidelines, including— Or is that going to be your co-counsel? We do have arguments about grouping, and I'm happy to turn to those now. Because you don't have much time left, and I have a question about grouping. Wasn't the total offense level the same regardless of whether they were grouped or not? Your Honor, it's correct that had these counts been grouped in a single group rather than two groups as they were by the district court, the offense level would have been the same. We don't think that that's the end of the analysis. The court here, the standard for harmlessness is that the court makes clear on the record that it would have imposed the same sentence regardless of its ruling on the issue, even if it had ruled in our favor. I don't think the court makes an explicit statement to that effect, but I'd also just step back a level and say that— But she did explicitly acknowledge that the grouping did not affect the offense level. The district court did. Yes, Your Honor. We concede the offense level would have remained the same whether these were two groups or one group as we are arguing for. And isn't an offense level of 45 already off the chart? The guidelines range goes up to 43, so due to a prior obstruction, he was at 45. One more point I want to make on the grouping with my remaining time, as I see I'm getting close here, is the whole purpose of Section 3 of the guidelines, which addresses grouping, is in large part to prevent the imposition of multiple punishment for the same substantial underlying conduct. And that's, in fact, what we submit was the case here. So, yes, there is this prerogative to follow 5G1.2 and stack the sentences, but that very much does violence in its intention with not only other provisions of the guidelines but federal sentencing law. I see I'm at time, Your Honor. All right. Thank you. Thank you. We'll hear from Mr. Young. Thank you, Your Honors. May it please the Court. In the sentencing proceedings in this case, Mr. Hawley's counsel had an actual conflict that adversely affected his representation, Mr. Hawley, at sentencing. Under Kyler Riesel, then this Court, the Supreme Court, said that you need to show an actual conflict and you have to show that that conflict adversely affected the representation at sentencing. There was an actual conflict at sentencing in this case. Need only start at the January 10th, 2024 hearing. Mr. Perdujirou shows up at that hearing, says he just spoke with his counsel who he hadn't, with his client, who he hadn't spoken to in months. His client had been doing research and wanted to raise an issue that Hawley's counsel had actually missed at trial. That is, he didn't impeach one of the government's key witnesses about the fact that Mr. Hawley had been in custody for a separate offense at the time that the government's key witness said that he had spoken to him about keeping the gun in the case. And what did Mr. Perdujirou think about this issue? When we talk about what's an actual conflict, what matters is... But he wasn't in custody that entire day, correct? Yes, Your Honor. He wasn't in custody in the morning. The records show that he was at least in custody at 1.40 p.m. in the afternoon and he was in custody at least until around 10.15 in the evening. So there's a huge chunk of time where he was not able to communicate with Mr. Murray. And so the issue is... And a huge chunk of time where he was. Yes, Your Honor. I think the important issue here is not whether or not the cross-examination would have been perfect at the trial court looking back 12 years later. Is it something that counsel missed? But even more importantly, did Hawley's counsel think that he had missed something where he felt like he had a conflict that was impairing his representation? I guess I'm trying to understand your conflict issue here because of it being a resentencing. So the district court judge is aware. Even though he did not cross-examine him as to this issue during the trial, now we're at resentencing. The district court judge is aware of this issue. I'm just trying to understand how this relates to the actual resentencing before the district court. Right. So my understanding of the record is that Mr. Hawley had been doing his own research, looked at the PSR, reminded his counsel right before on the eve of sentencing. Sentencing was supposed to happen January 10th. Hey, you were my trial counsel. I was in jail at the time that this guy says that we spoke about keeping the gun. And this relates to count two, the attempt offense that he was convicted of. Hawley's counsel shows up at the sentencing on January 10th at what was supposed to be a sentencing hearing. He's asking for a continuance. He says, Your Honor, this is something that I completely missed at trial. It's a motion for new trial, right? And that's different from the sentencing. And the district court said you should have, he requested, can I have new counsel, different counsel for my motion for new trial? Fine to go ahead with the sentencing. And the court said that sounds like a plan. We don't even have a proper motion in front of us. So we'll move ahead with the sentencing because there's no conflict there. And you can have new, different counsel for your motion for new trial later. So that's where we are. What's wrong with that? Well, first of all, that all happened after his counsel had already been conflicted as of January. That all happened at that sentencing hearing April 18th. Mr. Hawley, acting pro se at that point because he had been informed by his counsel, I can't represent you on those issues, did package his argument. But this is the sentencing. How did any of that impact the sentencing and a re-sentencing at that? Right. The re-sentencing spans from January to April because how did it impact? What did it matter? What did it matter at the sentencing? One of the key issues, if you read the transcript from the sentencing, one of the key issues that the trial court, the district judge, relied on in differentiating Mr. Hawley, who did not pull the trigger in this offense, from Mr. Stevens, who did pull the trigger. They got the same offenses. If you look at the record, what it's littered with is, Mr. Hawley, I don't think you have enough remorse for this particular offense. What did the district judge rely on? January 10th, the hearing, when conflicted counsel put Mr. Hawley on the stand. At that point, conflicted counsel had not even read the trial transcript. That's in the record. And then he proceeded to cross-examine his own client about, A, when were you in jail that day? B, well, didn't you receive a text message when you said you were in jail? C, but didn't you supply the gun and dispose of it afterwards? So Mr. Hawley, my client, doesn't this really not even matter? That's what his counsel did. So when we talk about was there a conflict, look at whether Mr. Perduzziro, Hawley's counsel, thought there was a conflict. Look how he behaved at that particular hearing. But I guess, I guess, and maybe I won't speak for Judge Thacker, but I guess what we're trying to ask is, for purposes of re-sentencing, how does that affect, I understand for your argument, if we were at a motion for a new trial. But for purposes of re-sentencing, before the district court judge, who is aware now that he was in jail during this time, if that is a mitigating factor, how does that affect the re-sentencing where the judge does know this, where the judge knows this? Well, I think it's important to say that it's not the outcome. We don't have to show that a different outcome would have been reached. We don't have to show that a different sentencing outcome would have been reached. But you do have to show that counsel, there was a strategy that they should have pursued that they didn't pursue, and there's a link between not pursuing that strategy and the conflict. Correct. I understand that to be Judge Benjamin's question. Right. Or they did something that they shouldn't have done, which is put their client on the stand on January 10th, have him testify, cross-examine him, having not reviewed the record, and then we can directly link that to the sentencing on April 18th. The district judge is citing his testimony from January 10th. At the January 10th hearing, the district court contemplates, says, I don't know this, you know, I'm not reaching a decision here, but the government had argued that this might be appropriate for an obstruction enhancement. So he put his client in a terrible position. Well, was that the attorney or was that the client saying, I mean, he's the one who wanted to file the motion saying I didn't do it, I couldn't have done it, right? If anything, that's the problem. Well, I think the problem is we keep talking about the motion for a new trial. Which is not on appeal, right? Correct. We don't have a good faith argument against the judge's ruling that that was 12 years out of time, something that certainly a pro se litigant would perhaps miss. The point, and when this was first raised, what Mr. Prodigy or Holly's counsel said at the time was that we have an issue that's relevant, perhaps to a motion for a new trial or relevant to sentencing. And at that point, Mr. Prodigy realized he had a conflict, and that conflict inhibited him from, he started looking out for himself and put Mr. Holly on the stand to say. Was there an obstruction enhancement based on that January testimony of Mr. Holly? There was already an obstruction enhancement applied at the original sentence. There wasn't an additional obstruction enhancement. So that did not impact the re-sentencing? No, but the testimony itself did, Your Honor. The testimony itself, the judge repeatedly cites, Mr. Holly, you were on the stand January 10th. You said you had the gun, you provided the gun, you kept the gun. And so why did his counsel put him on the stand under those circumstances? Well, the chief factor that the judge used to differentiate Mr. Holly from Mr. Stevens, who again pulled the trigger, was that I don't think you're remorseful enough about this offense, Mr. Holly. And so I'm going to give you the same sentence that I gave the person who pulled the trigger. And again, what was the judge relying on? This had happened 12 years ago, had a very recent opportunity. Which was a downward departure, right? Your Honor, I'm sorry? The sentence was a downward departure, right, from what the guidelines said he should get? The government was arguing for 60 years, he got 40 years, he had asked for 20 years. So again, I know the government says that his counsel did, quote, a highly successful job. Well, he asked for 20 years and he got 40 years for an offense he committed when he was 18 years old. He could have gotten 60 years. Yes, Your Honor, he could have gotten 60 years. You have two minutes in rebuttal. Thank you, Your Honor. Thank you. All right, and we'll hear from the government. May it please the Court, Rebecca Gant on behalf of the United States. This appeal arises from a resentencing 12 years after defendant was convicted for his role in two attempted robberies and conspiracy. The defendant provided the gun for the attempted robberies, which was ultimately used in the murder of the store employee, Mr. Robert Nelson. The defendant then disposed of the gun after the murder, and after he was charged, perjured himself in a suppression hearing. The defendant was originally sentenced to life plus five years. At the resentencing, he had the same offense level off the charts at 45, the same criminal history category of three. The district court sentenced him to 40 years, well below the statutory maximum sentence and restricted guidelines range. The defendant also raised the last minute new trial motion, which the district court ultimately denied, and the defendant never appealed. I'll take the claims of error in the same order as the defendant, starting with the consecutive sentences. The defendant has failed to establish any presumption or bar against consecutive sentences in this situation. As the court has already noted, that's been conclusively established in the Oliver decision. All that 3584B requires in this situation is that the court look to the 3553A factors in making the determination. And there's no argument that it did so here. Its decision to run the sentences consecutively was also consistent with section 5G1.2 of the guidelines. The district court also had discretion here under the sentencing package doctrine, which recognizes that a district court may have an overall plan and seek to achieve a sentence consistent with the original sentence. And here the district court imposed a sentence of 40 years, which was still below the life sentence originally imposed. I'll turn now to the grouping, unless the court has questions on consecutive sentences. First, any error on grouping was clearly harmless where the offense level had not changed and where the district court imposed a significant downward variant sentence. The district court gave no indication that the grouping analysis drove its ultimate decision on the sentence here. Instead it thoroughly went into other factors that led to its decision to impose a 480 month sentence. And I don't think this court has ever imposed some sort of magic word requirement where the district court is required to say, I would have given the exact same sentence regardless of any errors raised on appeal. Could the district court, regardless of the grouping, still consider the offense conduct in determining the ultimate sentence, regardless of how they're grouped? Could it still factor into choosing where? I mean, there's no range here. There was one guideline sentence, but in choosing where to sentence the defendant. Certainly, Your Honor, the court could consider over how many days the conduct took place. The district court mentioned that there were two different attempts, that the defendant's co-conspirators went into the gold shop on two different days, and that did seem to have been somewhat important to the court. The grouping and the decision not to group is also entirely appropriate under the analysis that this court set forth in the United States v. Pitts decision, which looks to factors including breaks in time, the means used, the participants involved in the attempts, and the separateness of fear and risk of harm. Two unpublished decisions by this court are also instructive. The Chambers decision, which affirmed a lack of grouping where there was the same victim over a laundering and larceny offense, and the Moore decision where there were two arsons of the same house. In both instances, the court affirmed the decision not to group. The guidelines commentary here, which the court looked to in the United States v. White decision, also supports the grouping decision, and particularly the comment in section 3D1.2, note 4, that robbery of the same victim on different occasions involves multiple separate instances of fear and risk of harm, not one composite harm. I'll move on to the disparities argument. The principal argument in the defendant's brief is that the district court was somehow obligated to sui sponte, look to national statistics that were never presented to the district court. I don't think there's any case establishing that that's something the district court is required to do, and let alone that this would be plain error since this argument was not raised below. In any event, the claim of error doesn't survive review under any standard. The database that the defendant points to on appeal shows exactly what the court has cautioned before, that this is a treacherous inquiry to look to other cases. There's also no requirement that this court has established that when a district court consults national statistics, that it impose the average or median sentence. The two cases discussed in the briefs where the court did find error based on disparities with national statistics were far different differences than here. In the Freeman case, I believe the sentence imposed was double the national statistics, and in Brown it was more than double. What we have here is a median sentence of 420 months, which is relatively quite close to the 480 months Mr. Hawley received. As a comparison with the co-defendants, Mr. Hawley had the highest defense level of all the defendants in this case, and he was tied for the highest criminal history category with co-defendant Murray, who cooperated and testified at the trial. I'll move on to the conflict issue, unless the court has further questions on the guidelines. Case law is clear that the mere possibility of a conflict is insufficient to establish a claim. There must be an actual conflict that arises from a lawyer having to choose between his client's best interests and implicating him or herself in their own, quote, serious misconduct, and that's from the Glover decision. What we have here, at the very most, is garden variety claim of ineffective assistance of counsel that trial counsel made a decision whether or not to cross a witness and what they would have crossed the witness on. This is far from something that arises to serious misconduct. The Glover case from this court is instructive. There the court held that the serious misconduct standard was satisfied where the client had alleged that his attorney coerced him into his guilty plea, which the court emphasized went far beyond the normal differences in strategy, trial strategy, between an attorney and a client, and that this claim would amount to malpractice if true. If the court were to find here that this was a conflict requiring replacement of the attorney, I think probably every defendant who was convicted of trial would have a new attorney for sentencing because I think most defendants are probably not satisfied with their attorney after convicted at a jury trial. But the motion for a new trial ultimately didn't even include an IEC claim, did it? Not that, I mean, that came after the sentencing, but. That's correct, Your Honor. Both the one after the sentencing and then there was the one that the district court struck. I believe the subsequent one was much longer than the one presented to the court shortly before the resentencing. But neither of those raised any claim about what the attorney should or should have not done. The claims in those briefs were prosecutorial misconduct. Neither Mr. Hawley nor- Assuming we find there was a conflict, what's your response to opposing counsel's argument that it did impact the resentencing because the court focused on Mr. Hawley's lack of remorse? Yes, Your Honor. First, I would point out that there was no adverse effect argued in the opening brief of the defendant, so I would contend that that claim is waived. But I was puzzled by the representation by counsel today that the district court repeatedly cited back to the January 10th hearing at the resentencing. I didn't see that in the record. The district court certainly referenced, as part of its analysis of the 3553A factors, Mr. Hawley's remorse and what the district court viewed as its lack of remorse. But I think clearly in context and also explicitly, the district court was referring to Mr. Hawley's allocution. As the court noted previously, there was an objection about the obstruction of justice enhancement and that the arguments of the parties in the district court's ruling focused exclusively on the perjury at the suppression hearing. And so I'm not aware of the district court finding that Mr. Hawley testified untruthfully at the January 10th hearing or incorporating that into its remorse finding. In fact, I think the fact that the adverse effect standard would not be satisfied is shown by Mr. Prodigero's explicit incorporation of the jail call records or the detention records, which he used as the basis of his argument for a minor participant enhancement. And the crux of the adverse effect analysis is that the defense counsel did not do something because of the asserted conflict. An example of that is this court's decision in Nicholson where the court found that there was an adverse effect because defense counsel didn't raise a self-defense departure motion. And that's because the defense counsel had represented the victim as well as the defendant. So there was a direct connection between the asserted conflict and the claim of what the defense attorney did not do. Because we're on direct appeal, the defendant has to show ineffective assistance that is clear on the record. And I don't think we have anything close to that. It's notable that neither Mr. Prodigero nor his client ever raised a claim of disagreement regarding the resentencing. In fact, at joint appendix 886, Mr. Prodigero notes that he and Mr. Hawley have gotten along wonderfully, and there was no issue like that for the resentencing and that he was prepared to go forward. Unless the court has further questions, I would ask that the court affirm the decision below. Thank you. All right, thank you. We'll hear again from Mr. Irola. Thank you, Your Honors. The government makes much of the fact of arguments, certain arguments that Mr. Hawley did not make at resentencing, but I think that ignores the reality that trial counsel was laboring under a conflict and was distracted and concerned with self-preservation. So I'm not sure that's the right prison through which to view these. I want to turn briefly to the disparity argument because I didn't get a chance to cover that last time. It's our position that the court abuse its discretion in applying this factor under 18 U.S.C. 3553. That's so for two reasons. One is the law is clear. When applying this factor, the disparity with which the factor is concerned is discrepancies nationwide. It's not limited solely to the defendants to the case. That doesn't mean, contrary to the government's representations, that the court needs to sua sponte, look at the JSON database, or some other specific source. But it does need to make a record for appellate review that it, in fact, considered and sufficiently considered this factor. And on the face of the record, that simply is not clear. Even within- It would have sua sponte had to do that because appellant didn't raise it with the district court. It wasn't argued at the resentencing. Well, I think, Your Honor, our argument is that there's procedural error insofar as the record doesn't reflect that the court considered this factor properly. I suppose there's a number of ways you could go about doing so, but there's nothing to suggest that they did anything other than- Did appellant argue about or for national statistics or argue national statistics to the district court at resentencing? Your Honor, he did not, and I think that ties into our broader arguments about and the extent to which that impacted these proceedings. Even within this own case, however, there's unwarranted disparities between the sentences that were ultimately imposed and how Mr. Hawley and Mr. Stevens were treated here. They both received the same sentence, and much of that reasoning seems to be based on the court's perception that Mr. Hawley lacked adequate remorse and acceptance of responsibility. And, Your Honor, it's a shame on my time if I can just finish the point. The court placed undue weight on this factor for a few reasons. One, for starters, Mr. Hawley did express remorse, both at his initial sentencing and his resentencing. He didn't receive any credit for acceptance of responsibility, so he's already being punished for not getting the benefit of what would come with an acceptance of responsibility and cooperation. But, two, these two defendants are differently positioned. As Mr. Young explained, Mr. Stevens was the shooter, he was a mastermind. Mr. Hawley's role is different. That doesn't diminish the severity of his conduct, but they were differently situated. And then the last point I just want to hone in on, which, again, Mr. Young touched on a little bit, was the undue weight placed on the remorse ignores the incredibly fraught situation that Mr. Hawley was placed in at resentencing. Three months prior, there's a hearing in January where there's evidence, potential mitigating evidence, that wasn't raised at trial that's the subject of a discussion there. Mr. Hawley, on his counsel's advice, testifies at that hearing and makes certain statements. And then, so what your co-counsel's talking about, that's fine, you can take his time. I do have questions about that. Or do you want to let him talk about that? I want to let him address it. I just wanted to say that, and I will cede my time, I just wanted to say that the extent, the court placed undue weight on his lack of remorse because it didn't take account of the bind that they put him in as a result of this January 23rd hearing. But I will cede my time. All right. Thank you. We'll listen to Mr. Young on that point now. Because I think we both have questions. Thank you, Your Honor. So where, please cite me to the JA, where the district court relied on the January hearing for lack of remorse. Repeatedly, like as you said. Yes, Your Honor. I don't have the record cite in front of me. And it's not in your briefs because you didn't argue it in your opening brief. So how am I, when I read it, page 932, the district court says, he has not been remorseful. Even at the original sentencing, he was hesitant. He never said, I accept responsibility. And then on 933, she said, even today, he stands in front of the court and still never comes forward. He says, I never wanted to be a part of this. Are you sorry? So she's relying on the original sentencing and his statements at the resentencing. Yes, Your Honor. So where is she relying on the January hearing? When they're arguing the objections that Mr. Protiger is arguing to the PSR, she talks about the fact that you were here in January and you admitted that you had the gun and you kept the gun. And I think that that does feed into. So that's not about remorse. Well, I do think it feeds into remorse. I think it also feeds into the fact that Mr. Hawley's counsel. Well, at the part of the transcript you're talking about, does the district court use the word remorse or the word sorry in the way that the district court did in the portions that Judge Rushing just read? Your Honor, I don't know if it's necessarily proper to parse the transcript in that way. The court is looking at everything that's coming forward. Well, I don't know that we're parsing. You said to us that the court repeatedly relied on the January 10th hearing and his testimony to find that the appellant was not remorseful enough. We're just trying to figure out where did the district court actually say that? I didn't say that that was the only thing the court relied on in finding a lack of remorse, but it did to draw a through line from the January 10th hearing to the April 18th hearing. If he doesn't get on the stand on January 10th, the court can't cite to it at all throughout the April 18th sentencing. And it does just cite to what he said in trial or at the original sentencing. Thank you, Your Honors. All right. Thank you. And the court would like to particularly thank you, Mr. Irola and Mr. Young, for we know you're court appointed and we appreciate your representation and that of your co-counsel, Ms. Fierst, is it? Thank you very much. And we also, of course, appreciate the able arguments of Ms. Gant on behalf of the United States. We'll come down and greet counsel and go to our final case.
judges: Stephanie D. Thacker, Allison J. Rushing, DeAndrea Gist Benjamin